CORRIGAN,
J. In this case, we consider whether a parolee who is convicted of and sentenced to a term of imprisonment for a felony committed while on parole is entitled, under Michigan’s jail credit statute, MCL 769.11b, to credit for time served in jail after his arrest on the new offense and before sentencing for that offense. We hold that, under MCL 791.238(2), the parolee resumes serving his earlier sentence on the date he is arrested for the new criminal offense. As long as time remains on the parolee’s earlier sentence, he remains incarcerated, regardless of his eligibility for bond or his ability to furnish it. Since the parolee is not being held in jail “because of being denied or unable to furnish bond,” the jail credit statute does not apply.
Further, a sentencing court lacks common law discretion to grant credit against a parolee’s new minimum sentence in contravention of the statutory scheme. Finally, the denial of credit against a new minimum sentence does not violate the double jeopardy clauses or the equal protection clauses of the United States or Michigan constitutions. US Const, Ams V and XIV; Const 1963, art 1, §§ 2 and 15.
*553 I. FACTS AND PROCEDURAL HISTORY
About 3:00 a.m. on November 23, 2006, while defendant was on parole,[1] he confronted Brenda Young, an employee of the Bow Tie Tavern in Alpine Township, Kent County, as she was closing the bar for the night. She was the only person still present in the bar. Defendant approached Young with a shotgun when she opened the back door to take out the trash. He questioned her about the keys to the jukebox, pool table, cigarette machine, and lottery machine. She told him that she only had the key to the lottery machine. She opened the machine, surrendering the cash inside. Defendant pried open the jukebox with a crowbar and took the cash inside. He then tied up Young and stole her car. She freed herself about 40 minutes later and called the police. An investigation revealed defendant’s involvement in the crime, and police arrested him on November 28, 2006.
Defendant pleaded guilty to armed robbery, MCL 750.529, and possession of a firearm during the commission of a felony, MCL 750.227b. On March 6, 2007, the court sentenced him to a term of 12 to 50 years’ imprisonment for the armed robbery conviction and the mandatory consecutive two-year term for the felony-firearm conviction. The sentencing court did not grant defendant credit against the new sentences for the 98 days he spent in jail between his arrest and sentencing.
Defendant’s appellate counsel moved for postjudgment relief, arguing that jail credit was mandatory under MCL 769.11b and, in the alternative, that the court had discretion to award credit. Citing People v Seiders, 262 Mich App 702; 686 NW2d 821 (2004), and People v Filip, 278 *554 Mich App 635; 754 NW2d 660 (2008), in which the Court of Appeals held that parole detainees are not entitled to jail credit under MCL 769.11b, the sentencing court denied the motion. The court also ruled that it lacked common law discretion to award credit because MCL 768.7a(2) mandates consecutive sentencing for parolees who commit new felonies while on parole. The Court of Appeals denied defendant’s application for leave to appeal for lack of merit. People v Idziak, unpublished order of the Court of Appeals, issued July 25, 2008 (Docket No. 285975).
II. STANDARD OP REVIEW
This Court reviews questions of statutory interpretation de novo. People v Stewart, 472 Mich 624, 631; 698 NW2d 340 (2005). We also review constitutional issues de novo. Harvey v Michigan, 469 Mich 1, 6; 664 NW2d 767 (2003).
III. ANALYSIS
A. INTRODUCTION
The issue of appropriate jail credit arises when a person is convicted of a crime and sentenced to imprisonment, granted parole, and then convicted and sentenced to prison for a new felony committed while on parole. After arrest, the parolee serves time in jail awaiting disposition of the new criminal charges. The issue is whether, after conviction of the new criminal charges, the parolee receives credit against his new minimum sentence for the time he served in jail. This is a significant problem because the prisoner’s new parole eligibility date is affected. If defendant here is awarded credit against his new minimum sentence for the 98 *555 days he served in jail, he will become eligible for parole 98 days earlier than if he is not granted such credit.
B. THE DEPARTMENT OF CORRECTIONS AND THE PAROLE BOARD
The Department of Corrections (DOC) calculates the new parole eligibility date of a parolee sentenced to a new term of imprisonment for a felony committed while on parole. The Parole Board has no discretion to grant parole until that date. The parties do not take issue with the practices of the DOC or the Parole Board. Understanding their functions is nevertheless critical to understanding the issue presented.
In general, a prisoner becomes subject to the jurisdiction of the Parole Board after he “has served a period of time equal to the minimum sentence imposed by the court. .. .” MCL 791.234(1). A prisoner sentenced to consecutive terms of imprisonment, “whether received at the same time or at any time during the life of the original sentence,” is subject to the jurisdiction of the Parole Board “when the prisoner has served the total time of the added minimum terms. . . .” MCL 791.234(3).[2]
*556 Before June 1, 1988, MCL 768.7a(l)[3] provided for consecutive sentencing for prison escapees and persons *557 who committed crimes while in prison. Under that provision and MCL 791.234(3),[4] the DOC had, for more than 40 years, “computed the eligibility for parole of an inmate who commits a crime in prison or an escapee who commits a crime while escaped by adding the consecutive minimum terms of all the offenses for which he is incarcerated in state prison.” Wayne Co Prosecutor v Dep’t of Corrections, 451 Mich 569, 579-580; 548 NW2d 900 (1996).
In 1988,[5] the Legislature added current MCL 768.7a(2), which provides:
If a person is convicted and sentenced to a term of imprisonment for a felony committed while the person was on parole from a sentence for a previous offense, the term of imprisonment imposed for the later offense shall begin to run at the expiration of the remaining portion of the term of imprisonment imposed for the previous offense.
*558 In Wayne Co Prosecutor, we considered the prosecutor’s argument that MCL 768.7a(2) impliedly repealed MCL 791.238(5)[6] and MCL 791.234(3) because “the ‘remaining portion’ clause of [MCL 768.7a(2)] .. . require[d] parolees who commit crimes while on parole to first serve the maximum of the earlier sentence before beginning to serve the new sentence.” Id. at 574. We rejected that argument. Instead, we concluded that MCL 768.7a(2) extended to parolees the same consecutive sentencing treatment to which prisoners who committed crimes while incarcerated and escapees were subjected under former MCL 768.7a(l). Id. at 577-578. We saw no indication that the Legislature intended to alter the DOC’s longstanding method of sentence calculation, as the prosecutor urged. Id. at 580-581. We held that
the “remaining portion” clause of [MCL 768.7a(2)] requires the offender to serve at least the combined mínimums of his sentences, plus whatever portion, between the minimum and the maximum, of the earlier sentence that the Parole Board may, because the parolee violated the terms of parole, require him to serve. [Id. at 584.]
Thus, in Wayne Co Prosecutor, we rejected the prosecutor’s argument that MCL 768.7a(2) requires a parolee to serve his entire original maximum sentence, plus his new minimum sentence, before becoming eligible for parole, and held that the DOC’s practice of calculating the new parole eligibility date, as mandated by MCL 791.234(3), was consistent with MCL 768.7a(2).
As the parties acknowledge, neither the DOC nor the Parole Board has sentencing authority. The DOC calculates the prisoner’s new parole eligibility date after *559 sentencing. Under MCL 791.234(3), the Parole Board lacks jurisdiction over the prisoner until he reaches that new parole eligibility date. In general, a parolee will have already served his original minimum sentence,[7] so he will become parole eligible after serving his new minimum sentence. At that point, the Parole Board has jurisdiction to decide whether the prisoner is worthy of parole. MCL 791.234(3). The issue here is not the practices of the DOC or the Parole Board, but whether the sentencing court is required or authorized, under MCL 769.11b or as a matter of common law discretion, to grant defendant credit against his new minimum sentence for the time he served in jail following his arrest for the new offenses and before his sentencing for those offenses.
C. THE JAIL CREDIT STATUTE
Michigan’s sentencing credit statute, MCL 769.11b, provides:
Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court *560 in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing.
Although this Court has not considered whether the statute applies to parolees, we considered its applicability in a related context in People v Prieskorn, 424 Mich 327; 381 NW2d 646 (1985). There the defendant posted bond for marijuana charges and was arrested while on bond for a driving offense. He was later incarcerated and began serving a 90-day sentence for the driving offense. In the case before this Court, he sought credit toward the sentence for the marijuana conviction for 51 days of the confinement he had served under the sentence for the driving offense. Id. at 343. We held that the jail credit statute “neither requires nor permits sentence credit” in cases in which a defendant released on bond after being charged with one offense is subsequently incarcerated as a result of charges arising out of an unrelated offense “and then seeks credit in the former case for that latter period of confinement.” Id. at 340. “Had the Legislature intended that convicted defendants be given sentence credit for all time served prior to sentencing day,... it would not have conditioned and limited entitlement to credit to time served ‘for the offense of which [the defendant] is convicted.’ ” Id. at 341. We concluded:
To be entitled to sentence credit for presentence time served, a defendant must have been incarcerated “for the offense of which he is convicted.” Since the fifty-one days of incarceration for which the defendant seeks credit is unrelated to the offense before us for which he has been convicted, he is not entitled to sentence credit for that confinement. [Id. at 344.]
In People v Adkins, 433 Mich 732, 739; 449 NW2d 400 (1989), we applied Prieskorn to a case in which the *561 defendant was released on bond after being charged with armed robbery and, before trial and conviction of the armed robbery charge, was arrested and convicted of two unrelated stolen property offenses in two other jurisdictions and began serving sentences for those convictions. We held that when, “as here, the defendant has served time not as a result of his inability to post bond for the offense for which he seeks credit, but because of his incarceration for another offense, [MCL 769.11b] is simply not applicable.” Id. at 751.
Relying on Prieskorn, the Court of Appeals recently held that the jail credit statute does not apply to parolees. Seiders held that a parolee arrested for a new criminal offense is entitled to jail credit exclusively toward the sentence from which parole was granted and not toward the new sentence. Seiders, supra at 705-708. The Court cited Prieskorn, supra at 340-341, for the proposition that MCL 769.11b “does not. . . entitle a defendant to credit for time served before sentencing if he is incarcerated for an offense other than that for which he is ultimately convicted, or for other unrelated reasons.” Seiders, supra at 706-707. It reasoned that because a “defendant is only entitled to a sentencing credit under MCL 769.11b if he has been ‘denied or unable to furnish bond’ ” and “bond is neither set nor denied when a defendant is held in jail on a parole detainer,” MCL 769.11b does not apply to a parole detainee. Id. at 707 (emphasis in Seiders). The Court of Appeals reaffirmed Seiders in People v Stead, 270 Mich App 550; 716 NW2d 324 (2006), and Filip. Filip, following Seiders, held that “MCL 769.11b is inapplicable under circumstances where a parolee is held on new charges that constitute a parole violation.” Filip, supra at 641. The Court reasoned:
*562 MCL 791.238(1) provides that a parolee remains legally in the custody of the Department of Corrections, and that “[p] ending a hearing upon any charge of parole violation, the prisoner shall remain incarcerated.” This provision unambiguously declares that parole violators cannot avoid confinement pending resolution of the violation proceedings. Such a period of incarceration thus constitutes part of the original sentence and in that sense is credited against it. Moreover, “denied,” as used in MCL 769.11b, implies the exercise of discretion, not the recognition of outright ineligibility. For that reason, MCL 769.11b simply does not apply to parole detainees. Therefore, the trial court erred in setting bond for Filip in the first instance. Simply put, the erroneously granted possibility of posting bond did not secure Filip any rights under MCL 769.11b. In sum, contrary to the trial court’s ruling, Seiders governs and must be applied. [Id. at 641-642.]
Although we reach essentially the same conclusion as the Court of Appeals did in Seiders and Filip — that the jail credit statute does not generally apply to parolees who commit new felonies while on parole — we do so on the basis of a somewhat different analysis. Consistent with our reasoning in Adkins, we hold that the jail credit statute does not apply to a parolee who is convicted and sentenced to a new term of imprisonment for a felony committed while on parole because, once arrested in connection with the new felony, the parolee continues to serve out any unexpired portion of his earlier sentence unless and until discharged by the Parole Board. For that reason, he remains incarcerated regardless of whether he would otherwise be eligible for bond before conviction on the new offense.[8] He is incarcerated not “because of being denied or unable to *563 furnish bond” for the new offense, but for an independent reason. Therefore, the jail credit statute, MCL 769.11b, does not apply.[9]
*564 Once a prisoner has served his minimum sentence, the Parole Board has jurisdiction over the prisoner and has discretion to grant parole. MCL 791.234(1). While on parole, the prisoner “shall be considered to be serving out the sentence imposed by the court,” MCL 791.238(6),[10] but he “remain[s] in the legal custody and under the control of the department,” MCL 791.238(1).[11] When there has been a “probable violation of parole,” the DOC may issue a warrant for the parolee’s return. MCL 791.238(1). Moreover, if “reasonable grounds” exist to believe that the parolee violated *565 his parole, he may be “arrested without a warrant and detained in any jail of this state.” MCL 791.239.[12]
Under MCL 791.238(2), a “prisoner violating the provisions of his or her parole and for whose return a warrant has been issued by the deputy director of the bureau of field services[13] ... is liable, when arrested, to serve out the unexpired portion of his or her maximum imprisonment,” but the “time from the date of the declared violation to the date of the prisoner’s availability for return to an institution shall not be counted as time served.” (Emphasis added.) Because a paroled prisoner is considered to be serving his sentence as long as he remains in compliance with the terms of his parole, MCL 791.238(6), except “from the date of the declared violation to the date of the prisoner’s availability for return to an institution,” MCL 791.238(2),[14] the second part of MCL 791.238(2) establishes that the time after “the date of the prisoner’s availability for return to an institution” is to be counted as time served against the parolee’s original sentence. For a prisoner paroled and arrested again in Michigan, the parolee’s “date *566 of. . . availability” is effectively the date of his arrest. See Browning v Michigan Dep’t of Corrections, 385 Mich 179, 188-189; 188 NW2d 552 (1971).[15] The phrase “date of... availability” indicates that the parolee resumes serving his earlier term of imprisonment when arrested and detained in jail even though he has not yet been returned to the physical custody of the DOC.
In sum, under MCL 791.238(2), the parolee is “liable, when arrested, to serve out the unexpired portion of his or her maximum imprisonment” and actually resumes serving that term of imprisonment on the date of his availability for return to the DOC, which in this case is synonymous with the date of his arrest.[16] The parolee is *567 not incarcerated “because of being denied or unable to furnish bond for the offense of which he is convicted .. . MCL 769.11b. Because the parolee is required to remain in jail pending the resolution of the new criminal charge for reasons independent of his eligibility for or ability to furnish bond for the new offense, the jail credit statute does not apply.[17]
*568 In this case, defendant was paroled on May 10, 2005, from multiple felony convictions. He committed the instant offenses on November 23, 2006, and was arrested on November 28, 2006. He remained in jail until sentencing on March 6, 2007, when he was returned to prison. He now seeks credit for those 98 days against his new minimum sentence. Under MCL 791.238(2), however, defendant resumed serving the remaining portion of his earlier sentences when he was arrested. He was not serving time in jail “because of being denied or unable to post bond” for the new offense, MCL 769.11b, so the jail credit statute does not apply.[18]
D. SENTENCING COURT DISCRETION TO GRANT JAIL CREDIT
We also reject defendant’s argument that a sentencing court retains discretion to grant credit[19] regardless of the applicability of the jail credit statute.[20] As explained, the statutory scheme pertaining to parolees dictates that defendant’s 98 days in jail were served against his original maximum sentence. The sentencing court had no discretionary authority to circumvent the *569 operation of the statutory scheme. MCL 769.11b “neither requires nor permits” sentencing credit except as provided in the statute. Prieskorn, supra at 340. “The enactment of [MCL 769.11b] reflects the Legislature’s intention to entitle every defendant in a criminal case to the sentence credit described in the statute, instead of leaving the matter to the discretion of sentencing courts.” Id. at 333; see also Hoerstman Gen Contracting, Inc v Hahn, 474 Mich 66, 74; 711 NW2d 340 (2006), quoting Millross v Plum Hollow Golf Club, 429 Mich 178, 183; 413 NW2d 17 (1987), citing 2A Sands, Sutherland Statutory Construction (4th ed), § 50.05, pp 440-441 (“ Tn general, where comprehensive legislation prescribes in detail a course of conduct to pursue and the parties and things affected, and designates specific limitations and exceptions, the Legislature will be found to have intended that the statute supersede and replace the common law dealing with the subject matter.’ ”). Accordingly, the sentencing court lacked the authority to grant defendant credit against his new minimum sentence.
E. CONSTITUTIONAL CHALLENGES
Defendant also claims that he was subjected to “multiple punishments” in violation of the double jeopardy clauses of the United States and Michigan constitutions. US Const, Am V; Const 1963, art 1, § 15. We disagree. “The double jeopardy clauses of the United States and Michigan constitutions protect against governmental abuses for both (1) multiple prosecutions for the same offense after a conviction or acquittal and (2) multiple punishments for the same offense.” People v Calloway, 469 Mich 448, 450; 671 NW2d 733 (2003). Defendant claims that because he did not receive credit for the time he spent in jail awaiting sentencing on the *570 new offenses, he “spent his time in jail awaiting conviction and sentence as a separate, additional term for the latter offense.” This is incorrect. As explained, defendant continued to serve out his earlier sentence after he was arrested. He was not subjected to multiple terms of confinement for his new offenses.
Finally, defendant claims that denying credit toward a parolee’s new minimum sentence violates due process[21] and equal protection guarantees because it results in unequal treatment of similarly situated defendants.[22] US Const, Am XIX § 1; Const 1963, art 1, §§ 2 and 17. We reject defendant’s contention.
The equal protection clauses of the United States and Michigan Constitutions are coextensive. Harvey, supra at 6. Unless the legislation at issue creates a classification based on “suspect” factors such as race, national origin, or ethnicity, which trigger the highest level of review (“strict scrutiny”), or factors such as gender or illegitimacy, which require an intermediate level of review (“heightened scrutiny”), it is reviewed under a rational basis standard. Id. at 7-8. Defendant acknowledges that rational basis review applies here.
Under rational basis review, “ ‘the statute is presumed constitutional, and the party challenging it bears a heavy burden of rebutting that presumption.’ ” Id. at 7 (citation omitted). “To prevail under this highly deferential standard of review, a challenger must show that the legislation is arbitrary and wholly unrelated in *571 a rational way to the objective of the statute.” Id. (quotation marks and citations omitted). “ ‘Rational-basis review does not test the wisdom, need, or appropriateness of the legislation, or whether the classification is made with “mathematical nicety,” or even whether it results in some inequity when put into practice.’ ” Id. (citation omitted).
As is significant to each of defendant’s constitutional arguments, parolees are situated differently from non-parolee criminal defendants and, as a result, they do not always enjoy the same “panoply of rights.” See Morrissey v Brewer, 408 US 471, 480; 92 S Ct 2593; 33 L Ed 2d 484 (1972) (“[T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations.”). A parolee is only conditionally permitted to leave prison on parole. Parole is “a permit to the prisoner to leave the prison, and not... a release,” and “[w]hile at large, the paroled prisoner shall be considered to be serving out the sentence imposed by the court.. ..” MCL 791.238(6). He “remain[s] in the legal custody and under the control of the department.” MCL 791.238(1). As this Court explained in In re Eddinger, 236 Mich 668, 670; 211 NW 54 (1926), the
purpose of a parole is to keep the prisoner in legal custody while permitting him to live beyond the prison enclosure so that he may have an opportunity to show that he can refrain from committing crime. It is a conditional release, the condition being that if he makes good he will receive an absolute discharge from the balance of his sentence; but if he does not make good he will be returned to serve his unexpired time. [Emphasis added.]
See also Jones v Dep’t of Corrections, 468 Mich 646, 651; 664 NW2d 717 (2003) (“A prisoner enjoys no constitu *572 tional or inherent right to be conditionally released from a validly imposed sentence.”).
Defendant claims that the denial of credit against a parolee’s new minimum sentence results in unequal treatment in two ways: first, it creates a disparity between parolees and nonparolees because the latter are granted credit, while the former are not, and, second, it creates a disparity among parolees based on the decision to plead guilty and other “arbitrary” factors that affect the parolee’s sentencing date.
The first claimed disparity arises from the application of the jail credit statute, MCL 769.11b. As we have explained, this statute does not apply to parolees upon their arrest for new crimes. Rather, parolees are granted credit against their earlier sentences for time served in jail under MCL 791.238(2). Thus, both parolees and nonparolees receive credit for time served. Defendant may prefer credit on his new sentence, but this is not what the statutes require. And it is entirely rational for the Legislature to treat parolees and non-parolees differently in this regard because parolees are continuing to serve out existing prison sentences after being granted mere conditional releases.
Second, defendant claims that denial of credit results in a disparity among parole violators based on the choice between a guilty plea and a jury trial, as well as other “arbitrary” factors, such as the degree of docket congestion. No statute, including MCL 791.238(2), the jail credit statute, MCL 769.11b, and MCL 791.234(3), which sets forth the method for computing the new parole eligibility date, makes a distinction between a parolee who pleads guilty and one who chooses to go to trial. Even if the Legislature had created such a distinction, the United States Supreme Court has stated that “there is no per se rule against encouraging guilty *573 pleas” and has “squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea.” Corbitt v New Jersey, 439 US 212, 218-219; 99 S Ct 492; 58 L Ed 2d 466 (1978). Moreover, this Court rejected a similar claim in Prieskorn, supra at 341-342:
It may be that for defendants who find themselves incarcerated for multiple unrelated offenses, one of the motivations to plead guilty to some of the charges is the desire to accelerate the imposition of sentence in order to benefit, as much as possible, from Michigan’s concurrent sentencing law. But that ingredient of a given defendant’s motivation derives from the peculiar facts with which the defendant facing multiple charges is confronted and not, we think, from limiting application of the sentence credit statute to those circumstances described by its terms. We think it is clear that the Legislature sought, by the statute, to give a criminal defendant a right to credit for any presentence time served upon “the offense of which he is convicted.” Judicial obedience to the language of the legislation may, incidentally, indeed coincidentally, have the effect of motivating a defendant, who is charged with multiple offenses and who has posted bond for one offense and was released, but who is incarcerated for a second offense, to waive his right to trial and proceed to plead guilty in the first case in order to get the sentencing clock running on that conviction while awaiting final disposition of the offense for which he is denied bond, or final resolution of an unrelated “hold” or “detainer.” However, that motivation does not change the language of the statute and should not be judicial excuse for applying the statute to situations to which it does not extend.
To the extent the denial of credit against the new minimum sentence results in some parole violators reaching their parole eligibility dates earlier than others on the basis of “arbitrary” factors such as docket congestion or a judge’s illness, this does not amount to a violation of equal protection. Any difference in treat *574 ment does not arise from any classification created by the Legislature, and even when suspect factors are involved, a disparate impact created by facially neutral legislation does not necessarily amount to a violation of the Equal Protection Clause. See Washington v Davis, 426 US 229, 242; 96 S Ct 2040; 48 L Ed 2d 597 (1976). Further, because of parolees’ unique status, defendant fails to meet the heavy burden of rebutting the presumption of constitutionality on this issue.[23]
*575 E EXAMPLE CALCULATION
As a simple illustration of how the statutory scheme operates to give credit against a parole violator’s original maximum sentence, consider this example. An offender is sentenced to 1 to 10 years in prison. He is granted parole after serving his minimum sentence. No time remains on his minimum sentence, and 9 years remain on his maximum sentence. After 2 years on parole, he commits an act that gives rise to a new felony charge. After a week of “dead time” during which he is not serving time against his prior sentence, he is arrested on the new felony charge and again begins serving the remaining portion of the prior sentence. At that time, he has 7 years remaining on his maximum. He spends 1 year in jail awaiting trial, conviction, and sentencing on the new offense. Accordingly, on his sentencing date, 6 years remain of his original maximum term. He receives a 2- to 5-year term of imprisonment for the new offense.
Under MCL 791.234(3), the DOC calculates the new parole eligibility date by adding the original minimum *576 term and the new minimum term. Because the offender has already served his entire original minimum term, his new parole eligibility date is 2 years from the date of sentencing on the new offense. The DOC calculates the new maximum discharge date by adding the new maximum sentence imposed by the court (5 years) to the offender’s original maximum sentence'(10 years). Thus, the offender’s new maximum term is 15 years. Because he has already served 4 years of his original maximum sentence, the offender’s new maximum term will expire 11 years from the date the new sentence was imposed.
IV RESPONSE TO CHIEF JUSTICE KETJY
Chief Justice KELLY agrees that defendant is not entitled to jail credit under MCL 769.11b, but bases her analysis on an interpretation of MCL 791.234(3)[24] that leads to an illogical result, fails to account for the broader statutory scheme, and is contrary to the longstanding practice of the DOC approved by this Court in Wayne Co Prosecutor.
When a prisoner is paroled after serving his original minimum sentence and serves time on parole before committing a subsequent offense while on parole, Chief Justice Kelly’s interpretation of MCL 791.234(3) would effectively allow the offender to begin serving his new minimum sentence before he commits the offense for which that sentence was imposed. In some cases, this will mean that the offender will, for parole eligibility purposes, have served his entire new minimum sentence before committing the crime. To illustrate, take *577 an offender who commits offense A and is sentenced to a term of 2 to 10 years in prison. After serving his 2-year minimum term, he is paroled. After 7 years on parole (9 years into his maximum sentence), the offender commits offense B and is immediately arrested. He immediately pleads guilty and is sentenced to a term of 2 to 10 years in prison for offense B. Chief Justice KELLY posits that MCL 791.234(3) requires us to simply add all the time the offender has served since the imposition of the sentence for offense A — whether in prison, on parole, or awaiting disposition of the new criminal charges — to determine the offender’s new parole eligibility date. Under this approach, the offender here became eligible to be paroled from his sentence for offense B after serving 4 years — 5 years before he committed offense B. We disagree with Chief Justice KELLY that this is what MCL 791.234(3) requires. MCL 791.234(3) states that for a prisoner “sentenced for consecutive terms,” the Parole Board has jurisdiction “when the prisoner has served the total time of the added minimum terms . . . .” The DOC’s longstanding practice of calculating a prisoner’s new parole eligibility date, reflected in our example calculation above and throughout our analysis, ensures that the parolee serves “the total time of the added minimum terms” while also accounting for the broader statutory scheme applicable to parolees sentenced to consecutive terms of imprisonment.[25]
*578 Moreover, MCL 791.238(6) provides that “[w]hile at large, the paroled prisoner shall be considered to be serving out the sentence imposed by the court.. . .” Nothing in MCL 791.238(6) indicates that time a prisoner spends on parole from the original offense may be counted as time served against a new minimum sentence not yet imposed, for a crime not yet committed. On the contrary, “serving out the sentence imposed by the court” indicates that the paroled prisoner continues to serve the sentence or sentences that exist at the time he is on parole — the sentences he began serving in prison and from which he was paroled. To use the example provided by Chief Justice KELLY, post at 598, a defendant may serve time toward his maximum terms for two separate consecutive sentences under the right circumstances. When a defendant is paroled after being convicted of a second offense and sentenced to a consecutive term of imprisonment, the defendant is then actually serving out the combined maximum term for the first and second offenses as calculated under MCL 791.234(3). Contrary to Chief Justice Kelly’s assertion, however, if the defendant commits a third offense while on parole from the first and second offenses, the court may not apply time served on parole before committing the third offense toward the sentence that will be imposed in the future for the third conviction. As noted earlier, this contravenes the plain language of MCL 791.238(6).
Similarly, MCL 791.238(2) provides that a prisoner who violates the terms of his parole “is liable, when arrested, to serve out the unexpired portion of his or her maximum imprisonment.” As previously discussed, the prisoner resumes serving that unexpired portion of his original maximum term on the date he becomes available for return to the DOC — in this case, the date of his arrest. MCL 791.238(2) indicates that, after he is ar *579 rested and becomes available for return to the DOC, the offender is serving out his original maximum sentence— not his yet-to-be-imposed new minimum sentence. Thus, we disagree with Chief Justice KELLY that “an affirmative and individualized determination [by the Parole Board] is the only proper mechanism for requiring the prisoner to serve additional time only toward his maximum term.” Post at 594.
Finally, Chief Justice Kelly’s interpretation of MCL 791.234(3) is inconsistent with Wayne Co Prosecutor. The defendant in that case was originally sentenced to 6 to 15 years in prison. He was paroled after serving about 6 years and 2 months in prison. After nearly 2 years on parole, the defendant committed another offense for which he was sentenced to 3V2 to 10 years in prison. Before turning to the effect of newly enacted MCL 768.7a(2), we noted that
[i]f the foregoing statutory provisions [MCL 791.234(3) and MCL 791.238(5)] were the only provisions applicable, [the defendant] clearly could be paroled after serving three and a half years on the breaking and entering conviction. He had already served more than the six-year minimum imposed for the armed robbery conviction before he was returned to prison. {Wayne Co Prosecutor, supra at 573 (emphasis added).]
We rejected the prosecutor’s contention that MCL 768.7a(2) impliedly repealed MCL 791.234(3) and MCL 791.238(5) and held that MCL 768.7a(2) extended to parolees the same consecutive sentencing treatment to which prisoners who commit crimes while incarcerated and escapees were subjected under former MCL 768.7a(l). Id. at 577-578. We explained the DOC’s longstanding method of calculating the new parole eligibility date as follows:
*580 For over forty years, the department has computed the eligibility for parole of an inmate who commits a crime in prison or an escapee who commits a crime while escaped by adding the consecutive minimum terms of all the offenses for which he is incarcerated in state prison. Thus, consecutive sentences imposed on persons who, while incarcerated or on escape, commit another crime will commence to run when the total of the minimum sentences imposed for prior offenses has been served. Accordingly, if an inmate or escapee, who has served beyond his minimum term, commits an offense while incarcerated or while on escape, the “consecutive” sentence would commence to run immediately. [Id. at 579-580 (second emphasis added).]
Thus, in Wayne Co Prosecutor, we understood MCL 791.234(3), MCL 791.238(5), and MCL 768.7a(2) to mean that if a parolee sentenced to a consecutive term of imprisonment for a crime committed while on parole had already served his original minimum sentence, his new minimum sentence would begin to run immediately. We did not suggest that a parolee could begin serving his new minimum sentence before committing the crime for which it was imposed.
The DOC’s longstanding method of calculating a prisoner’s new parole eligibility date yields logical results, complies with MCL 791.234(3), and is consistent with the statutory scheme relevant to parolees sentenced to consecutive terms of imprisonment for crimes committed while on parole. We approved the DOC’s practice as consistent with the consecutive sentencing mandate of MCL 768.7a(2) in Wayne Co Prosecutor, and neither party here takes issue with the practices of the DOC or the Parole Board. We find it puzzling that Chief Justice KELLY would replace the DOC’s practice with an approach that yields illogical results, is inconsistent with Wayne Co Prosecutor, and fails to account for the relevant statutory scheme.
*581 V RESPONSE TO JUSTICE MARKMAN
Justice MARKMAN constructs his analysis around a misconception that the Parole Board is statutorily required to make a “remaining portion” determination after a parolee is convicted or acquitted of a new crime allegedly committed while on parole. He posits that the Parole Board is required to decide how much, if any, of a defendant’s unexpired original maximum sentence he would otherwise (absent the second sentence) be required to serve before becoming eligible for parole. But parole eligibility is a function of statute, not Parole Board discretion, and there is no statutory requirement that the Parole Board make the affirmative determination Justice MARKMAN proposes.
Justice MARKMAN’s theory proceeds as follows. A prisoner is granted parole once he has served his minimum term of imprisonment. MCL 791.234(1). After his arrest for allegedly committing a new crime while on parole, the offender serves time in jail. Depending on whether the offender is convicted or acquitted, he may be serving that time against his original maximum sentence or his yet-to-be imposed new minimum sentence. Once the offender is convicted or acquitted of the new criminal charge, the Parole Board is required to convene and make an affirmative determination about what, if any, “remaining portion” of his original sentence the offender must serve before becoming eligible for parole (if acquitted) or beginning to serve his new sentence (if convicted). If the offender is acquitted of the new criminal charge, the time served in jail will be credited against his original maximum sentence. If the offender is convicted of the new offense, however, the offender is not considered to have been serving his original maximum sentence while in jail. Instead, he must be granted credit against his new *582 minimum sentence under MCL 769.11b. That credit must be “awarded as a component of the second offense,” but it “cannot actually be applied until the second sentence is commenced.” Accordingly, the new sentence is “suspended until the defendant serves the remaining portion of his original sentence.” Once the defendant has served that “remaining portion,” he begins serving his new sentence and the jail credit is applied.
Aside from the problem of its astounding complexity, this interpretation is premised on a nonexistent statutory requirement. Recall that a prisoner is generally eligible for parole when he has “served a period of time equal to the minimum sentence imposed by the court....” MCL 791.234(1).[26] Justice MARKMAN asserts that, after conviction or acquittal of the new criminal charges, the Parole Board is required to “make an affirmative determination as to whether the defendant is required to serve any remaining portion on his original sentence. . . .” Post at 619. He explains that “when the [Parole] Board determines the remaining portion of a defendant’s original sentence, it is essentially undertaking a discretionary decision about when the defendant would have been eligible for parole on his original sentence given the violation he committed while on parole.” Post at 616. Thus, Justice MARKMAN’s analysis is based on the idea that the Parole Board is required to determine how much time a parolee who violates his parole, but is not convicted of a second crime in connection with that parole violation, must serve “in order to be eligible for parole once again on his original sentence ....” Post at 615-616. He believes that the parol *583 ee’s parole eligibility date for the original offense changes or may change because the parolee has violated his parole.
The flaw in Justice MARKMAN’s theory is that parole eligibility is a function of statute: MCL 791.234. Unless a new sentence is imposed consecutive to the original sentence, in which case the offender’s new parole eligibility date is then governed by MCL 791.234(3), the offender’s parole eligibility date does not change. The defendant’s parole eligibility remains governed by MCL 791.234(1) and, therefore, the defendant was and is eligible for parole when he has served his original minimum sentence. Absent a new prison sentence that would bring parole eligibility within the ambit of MCL 791.234(3), the offender’s parole eligibility is unaffected by a finding of a parole violation. To be sure, the Parole Board has the discretion to revoke parole in that situation,[27] but that does not alter the offender’s status as eligible for parole. Indeed, the Parole Board is not required to revoke parole even if the evidence supports the parole violation allegation by a preponderance of the evidence.[28] We find no statutory support for Justice MARKMAN’s underlying conclusion that a parole violation alone may change the parole eligibility date previously calculated under MCL 791.234(1) by making it a matter of the Parole Board’s discretion.[29]
*584 “An agency such as the DOC has no inherent authority, and the limitations of its power and authority ‘must be measured by the statutory enactments from which it is created.’ ” People v Holder, 483 Mich 168, 175 n 21; 767 NW2d 423 (2009) (citation omitted). The Parole Board has the discretionary authority to grant or deny parole, MCL 791.233; MCL 791.234(1), (3), and (4); MCL 791.235. Once it has granted a prisoner parole, the Parole Board also has the authority to “dischargeG [the *585 prisoner] upon satisfactory completion of the parole.” MCL 791.234(3). In addition,
[i]f a prisoner other than a prisoner subject to disciplinary time has 1 or more consecutive terms to serve in addition to the term he or she is serving, the parole board may terminate the sentence the prisoner is presently serving at any time after the minimum term of the sentence has been served. [MCL 791.234(5).]
Finally, if the parolee violates the terms of his parole, the Parole Board has the authority to revoke parole. MCL 791.240a. None of these statutorily defined functions of the Parole Board includes a requirement that the Parole Board make an “affirmative determination of how long the defendant must serve on [his first] sentence.” Post at 617.
Instead, Justice MARKMAN locates the “remaining portion” requirement in MCL 791.234(1), as discussed above, MCL 791.241, and MCL 768.7a(2), as interpreted in Wayne Co Prosecutor. MCL 791.241 provides, in full: “When the parole board has determined the matter it shall enter an order rescinding such parole, or reinstating the original order of parole or enter such other order as it may see fit.” Justice MARKMAN concludes that this constitutes a statutory requirement that the Parole Board make an affirmative “remaining portion” determination because it provides that “the Board ‘shall’ enter an order taking some action after determining whether a parole violation has occurred. . . .” Post at 631 n 14. MCL 791.241 requires the Parole Board to enter an order rescinding parole, reinstating parole, or some other order “as it may see fit” once it has been determined whether the parolee violated his parole. Nothing in that provision requires the Parole Board to make a decision about how much additional time, if any, a parolee is required to spend in prison before being *586 paroled on some predetermined future date. Moreover, when, as here, the parole violation is “conviction for a felony or misdemeanor punishable by imprisonment,” the Parole Board does not “determineG the matter,” MCL 791.241, by holding a parole violation hearing because no parole violation hearing is required. MCL 791.240a(3).[30]
Justice Makkman locates the “affirmative determination” requirement on which his analysis is based in the following discussion of MCL 768.7a(2) in Wayne Co Prosecutor, supra at 584: “whatever portion, between the minimum and the maximum, of the earlier sentence that the Parole Board may, because the parolee violated the terms of parole, require him to serve.”[31] As is apparent from the statutes that pertain to the authority of the board (such as MCL 791.234, MCL 791.234, and MCL 791.240a), the Parole Board “requires” the parolee “to serve” by exercising its statutory authority to revoke parole, MCL 791.240a, and therefore delay the possibility of discharge, MCL 791.234(3), and by declining to exercise its discretion under MCL 791.234(5) to terminate the sentence the parolee is presently serving. The Parole Board may account for previous parole violations in making these decisions. See MCL *587 791.233e(2)(d). We find no statutory requirement that the Parole Board make an affirmative “remaining portion” determination. Had this Court in Wayne Co Prosecutor understood MCL 768.7a(2) to impose a new requirement on the Parole Board, we presumably would have said so.[32]
Thus, in addition to our disagreement with his interpretation of the jail credit statute, MCL 769.11b, we conclude that Justice MARKMAN’s approach to jail credit is inconsistent with the statutory scheme pertaining to the authority of the Parole Board and is not required by MCL 768.7a(2) or our decision in Wayne Co Prosecutor. Finally, even assuming that Justice MARKMAN is correct that this Court could order the Parole Board to make individualized “remaining portion” determinations without running afoul of Warda v Flushing City Council, 472 Mich 326; 696 NW2d 671 (2005),[33]post at 618 n 6, we question whether it would be advisable to do so. At the very least, such an order would require a major restructuring of the Parole Board’s policies and procedures. In addition, the DOC’s current practice of considering a parolee’s new sentence to begin running on the date it is imposed for purposes of parole eligibility applies equally to all prisoners. If this Court ordered the *588 Parole Board to make individualized “remaining portion” determinations, the Parole Board would be free to establish variable standards that would generally be unreviewable by the courts under Warda.
VI. CONCLUSION
Under MCL 791.238(2), defendant resumed serving his original maximum sentences when he was arrested in connection with the new criminal offense. Regardless of his eligibility for bond or his ability to furnish it, defendant remained in jail because he was serving those earlier sentences. Accordingly, the jail credit statute, MCL 769.11b, does not apply. The sentencing court lacked authority to grant defendant credit against his new minimum sentence because doing so would be inconsistent with the statutory scheme. Finally, denial of credit against defendant’s new minimum sentence did not subject him to multiple punishments for the same offense, and he has failed to show that the denial of credit against his new minimum sentence violated equal protection.
Affirmed.
Weaver, Young, and Hathaway, JJ., concurred with Corrigan, J.

 Defendant’s lengthy criminal history includes 13 prior felony convictions. He was granted parole on May 10, 2006.

 MCL 791.234(1) and MCL 791.234(3) apply to a prisoner “other than a prisoner subject to disciplinary time.” Where such a prisoner is concerned, the parole eligibility calculation takes into account any “good time and disciplinary credits” the prisoner has earned. MCL 791.234(2) and MCL 791.234(4) apply to a prisoner “subject to disciplinary time.” Although we refer to MCL 791.234(1) and MCL 791.234(3) throughout this opinion, our analysis and decision apply equally to both sets of provisions and both classes of prisoners because the language on which we rely appears in both sets of provisions.
A “prisoner subject to disciplinary time” includes (1) a “prisoner sentenced to an indeterminate term of imprisonment for” a listed offense committed on or after December 15,1998, or any offense committed on or after that date that is not listed and is punishable by life imprisonment, MCL 800.34(5)(a), and (2) “a prisoner sentenced to an indeterminate *556 term of imprisonment” for any crime that is not listed committed on or after December 15, 2000, MCL 800.34(5)(b).
MCL 791.234 provides, in relevant part:
(1) Except as provided in [MCL 791.234a], a prisoner sentenced to an indeterminate sentence and confined in a state correctional facility with a minimum in terms of years other than a prisoner subject to disciplinary time is subject to the jurisdiction of the parole board when the prisoner has served a period of time equal to the minimum sentence imposed by the court for the crime of which he or she was convicted, less good time and disciplinary credits, if applicable.
(2) Except as provided in [MCL 791.234a], a prisoner subject to disciplinary time sentenced to an indeterminate sentence and confined in a state correctional facility with a minimum in terms of years is subject to the jurisdiction of the parole board when the prisoner has served a period of time equal to the minimum sentence imposed by the court for the crime of which he or she was convicted.
(3) If a prisoner other than a prisoner subject to disciplinary time is sentenced for consecutive terms, whether received at the same time or at any time during the life of the original sentence, the parole board has jurisdiction over the prisoner for purposes of parole when the prisoner has served the total time of the added minimum terms, less the good time and disciplinary credits allowed by statute. The maximum terms of the sentences shall be added to compute the new maximum term under this subsection, and discharge shall be issued only after the total of the maximum sentences has been served less good time and disciplinary credits, unless the prisoner is paroled and discharged upon satisfactory completion of the parole.
(4) If a prisoner subject to disciplinary time is sentenced for consecutive terms, whether received at the same time or at any time during the life of the original sentence, the parole board has jurisdiction over the prisoner for purposes of parole when the prisoner has served the total time of the added minimum terms. The maximum terms of the sentences shall be added to compute the new maximum term under this subsection, and discharge shall be issued only after the total of the maximum sentences has been served, unless the prisoner is paroled and discharged upon satisfactory completion of the parole.

 Before the statute was amended in 1988, MCL 768.7a(l) provided:
*557 A person who is incarcerated in a penal or reformatory institution in this state, or who escapes from that institution, and who commits a crime during that incarceration or escape which is punishable by imprisonment in a penal or reformatory institution in this state shall, upon conviction thereof, be subject to sentence therefor in the manner provided by law for such crimes. The term of sentence imposed for the crime shall commence at the expiration of the term or terms of sentence which the person is serving or has become liable to serve in a penal or reformatory institution in this state.
MCL 768.7a(l), as amended by 1988 PA 48, now provides, in part: “The term of imprisonment imposed for the crime shall begin to run at the expiration of the term or terms of imprisonment which the person is serving or has become liable to serve in a penal or reformatory institution in this state.”

 1994 PA 217 renumbered former MCL 791.234(2) as MCL 791.234(3). The Wayne Co Prosecutor decision referred to this section as MCL 791.234(2) in order to remain consistent with the parties’ briefs. Wayne Co Prosecutor v Dep’t of Corrections, 451 Mich 569, 573 n 5; 548 NW2d 900 (1996).

 1988 PA 48, effective June 1, 1988.

 MCL 791.238(5) provides: “A prisoner committing a crime while at large on parole and being convicted and sentenced for the crime shall be treated as to the last incurred term as provided under [MCL 791.234].”

 In general, the parolee will already have served his minimum sentence in order to be eligible for parole, so he will be considered to be serving time against his original maximum sentence. As we explained in Wayne Co Prosecutor, however,
[MCL 791.233(l)(b)l permits “special parole” of a prisoner [other than a prisoner subject to disciplinary time, see MCL 791.233(l)(d)] “whenever the sentencing judge . .. gives written approval of the parole of the prisoner before the expiration of the minimum term of imprisonment.”
A special parolee who commits another offense while on parole thus will ordinarily have some time left to serve on the minimum of the earlier sentence before beginning service of the new minimum sentence. [Wayne Co Prosecutor, supra at 581.]

 Subject to several exceptions, the general rule under the Michigan Constitution is that all persons are entitled to bail before conviction. A parolee is, of course, in the posi-eonviction stage with respect to the earlier conviction from which he was paroled.
*563 Article 1, § 15 of the Michigan Constitution of 1963, which addresses eligibility for bond, provides in relevant part:
No person shall he subject for the same offense to be twice put in jeopardy. All persons shall, before conviction, be bailable by sufficient sureties, except that bail may he denied for the following persons when the proof is evident or the presumption great:
(a) A person who, within the 15 years immediately preceding a motion for bail pending the disposition of an indictment for a violent felony or of an arraignment on a warrant charging a violent felony, has been convicted of 2 or more violent felonies under the laws of this state or under substantially similar laws of the United States or another state, or a combination thereof, only if the prior felony convictions arose out of at least 2 separate incidents, events, or transactions.
(b) A person who is indicted for, or arraigned on a warrant charging, murder or treason.
(c) A person who is indicted for, or arraigned on a warrant charging, criminal sexual conduct in the first degree, armed robbery, or kidnapping with intent to extort money or other valuable thing thereby, unless the court finds by clear and convincing evidence that the defendant is not likely to flee or present a danger to any other person.
(d) A person who is indicted for, or arraigned on a warrant charging, a violent felony which is alleged to have been committed while the person was on bail, pending the disposition of a prior violent felony charge or while the person was on probation or parole as a result of a prior conviction for a violent felony [Emphasis added.]
See also MCR 6.106(B) (pretrial release/custody under Const 1963, art 1, §15).

 Despite Justice Markman’s lengthy criticism of Prieskorn, post at 610-611, it — along with Adkins — remains binding precedent. In any event, we base our analysis on the language of MCL 769.11b, which requires jail credit when the defendant serves time in jail “because of being denied or unable to furnish bond for the offense of which he is convicted____” A parolee who commits a new crime while on parole serves time in jail because he is serving out his earlier maximum term of imprisonment, not “because of being denied or unable to furnish bond for the [new] offense.”

 MCL 791.238(6) provides:
A parole shall be construed as a permit to the prisoner to leave the prison, and not as a release. While at large, the paroled prisoner shall be considered to be serving out the sentence imposed by the court and, if he or she is eligible for good time, shall be entitled to good time the same as if confined in a state correctional facility.
As explained in n 7 of this opinion, a prisoner granted parole will generally have already served his minimum sentence, so he is considered to he serving time against his original maximum'sentence.

 MCL 791.238 provides, in relevant part:
(1) Each prisoner on parole shall remain in the legal custody and under the control of the department. The deputy director of the bureau of field services, upon a showing of probable violation of parole, may issue a warrant for the return of any paroled prisoner. Pending a hearing upon any charge of parole violation, the prisoner shall remain incarcerated.
(2) A prisoner violating the provisions of his or her parole and for whose return a warrant has been issued by the deputy director of the bureau of field services is treated as an escaped prisoner and is liable, when arrested, to serve out the unexpired portion of his or her maximum imprisonment. The time from the date of the declared violation to the date of the prisoner’s availability for return to an institution shall not he counted as time served. The warrant of the deputy director of the bureau of field services is a sufficient warrant authorizing all officers named in the warrant to detain the paroled prisoner in any jail of the state until his or her return to the state penal institution.

 MCL 791.239 provides:
A probation officer, a parole officer, a peace officer of this state, or an employee of the department other than a probation or parole officer who is authorized by the director to arrest parole violators may arrest without a warrant and detain in any jail of this state a paroled prisoner, if the probation officer, parole officer, peace officer, or authorized departmental employee has reasonable grounds to believe that the prisoner has violated parole or a warrant has been issued for his or her return under [MCL 791.238],

 Although this provision mentions a warrant issued by the DOC, the prosecutor stated at oral argument that the DOC does not always issue a warrant. As noted earlier, a parolee may be arrested without a warrant and detained if there are “reasonable grounds” to believe that he has violated his parole. MCL 791.239.

 This provision is often referred to as the “dead time” statute.

 Browning held that “the phrase ‘date of availability’ means actual or constructive availability for return to the Michigan penal system.” Browning, supra at 189. Browning was decided before consecutive sentencing was mandated for parolees who commit new felonies while on parole. Also, as we noted in Browning, before 1968, the “dead time” statute — that is, the statute defining the time that will not be counted as time served for a parolee — used the language “date of arrest” instead of “date of... availability.” Id. at 187. Our decision in Browning addressed the disparity created between in-state and out-of-state parolees that resulted from the DOC’s interpretation of “date of.. . availability” when an out-of-state detainee was concerned. A 1969 DOC policy directive instructed that, for an alleged parole violator arrested outside of Michigan, “the date of availability will be the date on which the authorities in the holding jurisdiction declare the alleged violator to be available for return to Michigan.” See id. at 191. We noted that this interpretation effectively imposed consecutive sentencing on an out-of-state parolee and repudiated the DOC’s interpretation of “date of... availability” in this context. Id. at 189. We held that “the phrase ‘date of availability’ means actual or constructive availability for return to the Michigan penal system. The arrest of a parolee, irrespective of the location of the arrest, coupled with issuance of a parole violation warrant and good faith effort to retake the parolee constitutes constructive availability.” Id.

 Under Justice Markman’s interpretation of MCL 791.238(2), one does not know whether the time served in jail is to be considered time served against the parolee’s original maximum sentence until the parolee is convicted or acquitted of the new criminal charges. At that point, if the parolee is acquitted, “the [Parole] Board must then make a new determi *567 nation regarding how much of the ‘unexpired portion’ of the defendant’s original sentence must be served before the defendant can once again be paroled.” Post at 611-612. Only “[i]f the Board determines that the defendant does have to serve an unexpired portion” will a defendant who is “ ‘liable’ to serve the ‘unexpired portion’ ” of his original sentence be considered to have served the time in jail against his original maximum sentence. Post at 612. As explained in part V of this opinion, Justice Mabkman’s analysis is based on a nonexistent statutory requirement. It is also unnecessary. The meaning of “liable ... to serve” is found within MCL 791.238(2) itself: the parolee becomes liable, upon arrest, to resume serving his original maximum sentence and actually resumes serving it when he becomes “available”- — actually or constructively — to the DOC.
See also the brief of the DOC as amicus curiae in response to defendant-appellant’s application for leave to appeal in the case of People v Wright, 474 Mich 1138 (2006) (Docket No. 128424), at 5 (“Once the prisoner becomes parole eligible, the focus of the [DOC] is to keep track of the remaining maximum sentence. When the prisoner is granted a parole, each day on parole counts toward the service of the maximum sentence as well. Even if a parole is revoked, the time spent on parole is counted towards the service of the maximum sentence. The only time the service of a sentence is suspended or stopped is if the prisoner escapes from prison [see MCL 800.61] or if as a parolee the prisoner absconds from parole supervision [see MCL 791.238(2)].”) (emphasis added).

 We caution that, for a parolee who reached his maximum discharge date while being held in jail, this independent reason would be removed. If the parolee was then “denied or unable to furnish bond,” the sentencing court would he required to grant jail credit under MCL 769.11b.
See DOC Policy Directive No. 06.06.100, Parole Violation Process, § B (February 26, 2007) (“If a parolee approaching his or her potential maximum date is believed to have violated a condition of parole, the parole violation process set forth in this policy will be expedited to ensure it is completed prior to that date. Under no circumstances shall a parolee be held on pending parole violation charges beyond his/her maximum discharge date.”). The version of the policy directive in effect in 2006 contained an identical provision.
*568 This exception does not apply here because defendant was not nearing his maximum discharge date at the time of his arrest. According to information available on the DOC’s Offender Tracking Information System, defendant’s maximum discharge date before the new sentences were imposed was 2024 (defendant’s current maximum discharge date is listed as 2076, and his combined maximum for the new sentences is 52 years). See <http://www.state.mi.us/mdoc/asp/otis2profile.asp?mdocNumber= 124501> (accessed July 30, 2009).

 The court set a $500,000 bond in this case.

 Before the Legislature enacted the jail credit statute, a criminal defendant had no right to sentencing credit, and the matter was left to the discretion of the sentencing court. Prieskorn, supra at 333.

 Although there is language to the contrary in Adkins, supra at 751 n 10, the Court was not considering consecutive sentencing in that case.

 The substance of defendant’s argument focuses on equal protection; he does not separately address the requirements of due process.

 In his brief, defendant does not take issue with the DOC’s practices, but with sentencing courts’ denial of credit: “Disparity is created not by the MDOC parole violation process, but by the judicial practice to date of denying jail credit to parolees who commit new crimes. This practice is anchored by the belief that such offenders do receive credit, they just receive it somewhere else.”

 In his dissenting opinion, Justice Markman asserts that
the [Parole] Board’s current practice of failing to undertake its statutory responsibilities, passively waiting for a defendant to he convicted of a new crime, and then mechanically concluding that the amount of time a defendant has spent awaiting trial on his new offense automatically constitutes the remaining portion of the original sentence that the defendant must serve, treats identically situated defendants in a potentially widely disparate fashion .... [Post at 627.]
Justice Markman’s arbitrariness concern is grounded in his misconception of the statutory responsibilities of the Parole Board. As explained in part V of this opinion, parole eligibility is purely a function of statute. We acknowledge that factors such as docket congestion and a judge’s illness affect the date a parolee is sentenced for a new offense, the date he begins serving his new sentence, and, consequently, his new parole eligibility date. But this arises from the operation of the statutory scheme, not from any action — or inaction — of the Parole Board. As Justice Markman acknowledges, post at 628 n 11, some arbitrariness will always inhere in the criminal process.
Even Justice Markman’s interpretation of the statutory scheme does not remove all arbitrariness. Justice Markman posits that when the parolee is acquitted of the new criminal charges, “the Board must then make a new determination regarding how much of the ‘unexpired portion’ of the defendant’s original sentence must be served before the defendant can once again be paroled. If the Board determines that the defendant does have to serve an unexpired portion of his initial sentence, the defendant will then be awarded credit for time served on his original sentence.” Post at 611-612 (citations omitted).
To illustrate the arbitrariness that may result, assume Parolee A and Parolee B are each arrested on the same date and charged on the same *575 date with new criminal offenses allegedly committed while on parole. Both decide to go to trial and serve time in jail awaiting trial. Parolee A’s jury trial is held one month after his arrest, and he is acquitted. Parolee B’s trial is delayed for one year because of docket congestion, a judge’s illness, or continuances requested by the prosecution for reasons unrelated to Parolee B’s case. Parolee B is also acquitted. According to Justice Makkman’s theory, the Parole Board is in each case required to determine after acquittal whether the parolee is required to serve an “unexpired portion” of his original sentence and, if so, how much. Assume that in the case of each parolee, the Parole Board does so and determines that neither is required to serve any “remaining portion.” Thus, under Justice Markman’s theory, Parolee A is eligible for parole one month after arrest, while Parolee B is eligible for parole one year after arrest. Even if both receive credit against their original maximum sentences for the time served in jail, Parolee B has suffered parole eligibility consequences for arbitrary reasons.

 As the Chief Justice notes, her analysis applies equally to MCL 791.234(3) and MCL 791.234(4). Post at 589 n 2. Our response also applies to both subsections. For consistency, we will continue to refer to MCL 791.234(3).

 Chief Justice Kelly attempts to support her interpretation with an inapt comparison to a first-time offender being awarded jail credit for time served before his sentence is imposed. Post at 597. In the case of first-time offenders, the Legislature explicitly allowed that result by enacting MCL 769.11b. Nothing in the plain language of MCL 769.11b, however, suggests that credit may be applied to a time before the sentencing offense was even committed. Accordingly, Chief Justice Kelly’s example is inapposite.

 Justice Makkman acknowledges that “the date of [the defendant’s] parole eligibility is determined by MCL 791.234(1)....” Post at 604.

 “After a prisoner is released on parole, the prisoner’s parole is subject to revocation at the discretion of the parole board for cause as provided in this section.” MCL 791.240a(l).

 “If a preponderance of the evidence supports the allegation that a parole violation occurred, the parole board may revoke parole . ...” MCL 791.240a(10) (emphasis added).

 Justice Makkman quotes various sentences from the DOC’s amicus curiae brief in support of the proposition that the Parole Board is statutorily required to make a “remaining portion” determination but has “abandoned its responsibility in this respect.. ..” Post at 617 n 6.
*584 In its amicus curiae brief, the DOC emphasizes that it lacks sentencing authority and that its discretionary authority lies in determinations of parole worthiness. When one reads the entire brief, it is clear that the DOC is stating that the Parole Board “does not exercise its discretion” to make a “remaining portion” determination because it lacks the authority to do so. In addition, the DOC’s amicus curiae brief repeatedly refers the reader to its brief in People v Wright, 474 Mich 1138 (2006). There, the DOC explained:
After a parolee is returned to prison with a new consecutive prison sentence, the Parole Board does nothing, since the prisoner is not yet parole eligible as a matter of law until the new minimum sentence is served. It is meaningless for the Parole Board to attempt to make a prediction as to what their parole decision will be one, two, or more years in the future when the prisoner becomes parole eligible. However, unlike the situation of a prisoner returned to prison with a new conviction and consecutive sentence, if a prisoner is merely returned to prison as a parole violator for a ‘technical violation’ such as testing positive for alcohol while on parole release for an OUIL 3rd offense, the prisoner is still parole eligible, but the Parole Board has determined that the prisoner is no longer parole worthy. The Parole Board does not sentence the parole violator for a ‘technical violation’ to a new minimum sentence since the Parole Board does not have such power. Rather, the Board sets a new ‘continuation date’ at which time they will again review the prisoner for parole worthiness. The concept of a ‘continuation date’ is not reserved for parole violators only. If any prisoner is not granted a parole when they first become parole eligible by serving their minimum sentence, the Parole Board sets a new ‘continuation date,’ typically 12, 18, or 24 months in the future, when the prisoner will again be reviewed for parole worthiness. [Brief of the DOC, n 16 supra at 14-15 (emphasis in original).]

 Justice Markman also states that MCL 791.233e “provides additional guidance” to the Parole Board in making the “remaining portion” determination.
MCL 791.233e(l) requires the Parole Board to establish parole guidelines to “govern the exercise of the parole board’s discretion ... as to the release of the prisoners on parole .... The purpose of the parole guidelines shall be to assist the parole board in making release decisions that enhance the public safety.” (Emphasis added.) There is no reference there, or anywhere else in the statutory scheme, to a “remaining portion” determination.

 Chief Justice Kelly shares a similar interpretation. See post at 593-594.

 We also disagree with Justice Markman that a “remaining portion” determination requirement emerges from some combination of MCL 791.234(1), MCL 768.7a(2), and MCL 791.241. We believe the preceding discussion of these statutes makes it clear that there is no such requirement.

 Under Warda, supra at 336-337, if
a statute empowers a governmental agency to undertake a discretionary decision, and provides no limits to guide either the agency’s exercise of that discretion or the judiciary’s review of that exercise, the decision is not subject to judicial review absent an allegation that the exercise of that discretion was unconstitutional.