RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0406P (6th Cir.)
File Name: 03a0406p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*
                  No. 02-5540

MAURICE A. JOHNSON,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 01-00117—R. Leon Jordan, District Judge.

Argued: August 7, 2003

Decided and Filed: November 14, 2003

Before: BOGGS, Chief Judge; SILER, Circuit Judge; and
RICE, District Judge.[*]

———————————

## COUNSEL

**ARGUED:** Paula R. Voss, FEDERAL DEFENDER
SERVICES, Knoxville, Tennessee, for Appellant. F. M.

———————————

[*] The Honorable Walter Herbert Rice, United States District Judge for
the Southern District of Ohio, sitting by designation.

2    *United States v. Johnson*    No. 02-5540

Hamilton III, ASSISTANT UNITED STATES ATTORNEY,
Knoxville, Tennessee, for Appellee. **ON BRIEF:** Paula R.
Voss, FEDERAL DEFENDER SERVICES, Knoxville,
Tennessee, for Appellant. David C. Jennings, ASSISTANT
UNITED STATES ATTORNEY, Knoxville, Tennessee, for
Appellee.

———————————

## OPINION

———————————

BOGGS, Chief Judge. Maurice Johnson appeals the district
court's denial of his motion to suppress drugs found at one of
his temporary places of abode and his confession to being the
owner of these drugs. The state police had obtained a search
warrant for the residence of Hennis Tracy, Johnson's half-
sister, based upon surveillance of that residence and the
statements of a confidential informant. Upon execution of the
warrant, the police had discovered drugs at the residence, but
not Johnson. The police coaxed Johnson back to the premises
of the search by threatening to arrest Tracy if he did not
confess to owning the drugs. Johnson did so and eventually
pleaded guilty to possession with intent to distribute. On
appeal, he challenges the validity of search warrant and the
voluntariness of his confession. We affirm.

### I

On or about January 7, 2001, the Monroe County,
Tennessee, police department began a surveillance of Tracy's
residence. The primary target of the surveillance was
Johnson, Tracy's half-brother. Johnson himself had no
permanent residence but rather stayed for periods of days at
the homes of friends and family members, including Tracy,
and the police suspected that he dealt drugs out of his hosts'
homes. During the surveillance of Johnson's visit to the
Tracy residence, numerous short-term visitors, parking up to
six or eight cars at a time, were observed. Some of these

visitors were known to the police as having records of drug offenses. One visitor was also a confidential informant for the police department, who had previously provided information helpful to the prosecution of other drug offenses. On January 9, he informed the police that within the previous three days he had been present in the Tracy residence and had seen cocaine being sold there. The police subsequently sought a search warrant for the Tracy residence based on an officer's affidavit restating the information provided by the confidential informant. A magistrate judge issued such a warrant shortly after midnight on January 10.

At about 1:30 A.M. on January 10, the police executed the warrant on the Tracy residence. While Johnson was not found on the premises, the police did discover more than nine grams of crack cocaine hidden in the headboard of Tracy's bed. At this point Tracy disclaimed ownership of the drugs and placed the blame on Johnson. The police responded that they would not arrest Tracy if Johnson turned himself in and accepted responsibility for the drugs. Eventually, Tracy was able to track down Johnson via phone calls and an intermediary and asked him to return to the residence. At about 4 A.M., Johnson arrived at the Tracy residence, which was still occupied by about a dozen armed police officers. Johnson asked to speak with an investigating officer and the officer and Johnson retreated to the residence's back bedroom, leaving the door slightly ajar. Johnson immediately confessed to owning the drugs found in Tracy's bedroom. After reading Johnson his *Miranda* rights, he iterated this confession and was arrested. In the search incident to arrest, another gram of crack cocaine was found in Johnson's pocket.

On August 7, 2001, a grand jury in the United States District Court for the Eastern District of Tennessee indicted Johnson on one count of possession with intent to distribute more than five grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). The magistrate judge assigned to the matter held hearings on Johnson's motion to suppress the drugs and his confession as obtained in violation of the

Fourth Amendment guarantee against unreasonable searches and seizures and the Fifth Amendment privilege against self-incrimination and guarantee of due process. The magistrate judge recommended a denial of the suppression motion and the district court adopted this recommendation over Johnson's objection. In response, Johnson entered a conditional guilty plea subject to a reservation of the right to appeal the denial of his suppression motion and was sentenced to sixty months of incarceration and an equal period of supervised release. This timely appeal of the denial of the suppression motion ensued.

## II

"In reviewing the district court's denial of a defendant's motion to suppress, this Court reviews the district court's findings of fact for clear error and its conclusions of law de novo." *United States v. Miggins*, 302 F.3d 384, 397 (6th Cir. 2002) (citing *United States v. Bradshaw*, 102 F.3d 204, 209 (6th Cir. 1996)).

Johnson argues that the search warrant on the Tracy home was defective because the affidavit on which it was based was insufficient. "The standard of review for the sufficiency of an affidavit 'is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'" *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)). "A magistrate's determination of probable cause is afforded great deference by the reviewing court" and should only be reversed if arbitrarily made. *Greene*, 250 F.3d at 478 (citing *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc); *United States v. Finch*, 998 F.2d 349, 352 (6th Cir. 1993); and *Davidson*, 936 F.2d at 859). "[R]eview of an affidavit and search warrant should rely on a 'totality of the circumstances' determination, rather than a line-by-line scrutiny." *Greene*, 250 F.3d at 479 (citing *Allen*, 211 F.3d at 973). "Courts should review the sufficiency of the affidavit

in a commonsense, rather than hypertechnical manner." *Greene*, 250 F.3d at 479 (citing *Allen*, 211 F.3d at 973; and *Davidson*, 936 F.2d at 859). "Probable cause exists 'when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *Greene*, 250 F.3d at 479 (citing *Davidson*, 936 F.2d at 859). "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990).

The affidavit in the present case was given by one of the investigating officers. After recounting the averring officer's professional history, the affidavit summarizes the facts on which to base the search warrant as follows:

> On Tuesday, January 9, 2001, your affiant met with the proven credible and reliable source of information who within the past 72 hours has observed a quantity of crack cocaine stored inside [the Tracy residence]. The informant overheard conversations about crack cocaine, weights, and prices and was present when crack cocaine was purchased at the residence. The crack cocaine is being sold from the residence by Maurice Johnson, who does not reside at this residence, but frequents this residence with friends and relatives. Your affiant and other agents have conducted surveillance on this residence and have observed numerous vehicles, as many as six or eight at a time at the residence, some of which would stay for only short periods of time. Some of the vehicles which were observed by your affiant to come and go from the residence are known to your affiant to have a history of drug charges. . . . This confidential reliable informant is a creditable source of information who has proven reliable in the past and by facts contained in this affidavit. This informant has conducted at least four (4) controlled purchases of narcotics for your affiant which all have led to successful discovery.

This statement of facts was followed by a listing of evidence to be seized, including drugs.

Against the district court's conclusion that this affidavit was sufficient to support a search warrant, Johnson here raises a long series of meritless objections. Johnson complains that the warrant did not name the confidential informant. However, a warrant need not name a confidential informant, but merely provide indicia of reliability. This the affidavit does by stating that the confidential informant had previously provided information leading to successful discovery. Johnson objects that the affidavit merely claims "successful discovery," not resulting arrest and conviction. This objection misses the point of the claim which is to indicate reliability or truthfulness and not usefulness. Even if, through reasons that may not have been related to the informant, all previous successful searches based on his statements had not led to successful prosecutions, this would by itself not have thrown any doubt on the reliability or truthfulness of the informant. The mere fact that contraband was discovered where he claimed it was going to be discovered is sufficient indicia of his reliability. Johnson claims that the police surveillance of the residence could not have confirmed the reliability of the informant because the surveillance had started before the informant gave his statements. However, there is no logical reason why observations made prior to the statement should not be able to support the reliability of a statement made after the observations. Moreover, we note that the surveillance continued after the informant made his statements.

Johnson also criticizes the form of the affidavit on various technical grounds. The affidavit does not quote the informant directly and hence does not indicate exactly what the informant said. The affidavit did not state what quantities of drugs were observed and therefore leaves open the possibility that merely non-prosecutable trace amounts were present. The affidavit does not make clear the source of the statement that Johnson was a drug dealer. The informant merely claims

to have been present during the drug transactions and does not state that he actually witnessed the transactions or had witnessed Johnson buying or selling drugs. However, all of these objections are most charitably described as hypertechnical. The affidavit clearly implies what information was received from the informant by reciting facts, which could not have been known directly to the averring officer, immediately following the mention of the informant. If an informant claims to be present during a drug sale, the common-sense interpretation of that claim is that the informant witnessed the transaction and that the transaction involved quantities of drugs larger than trace amounts. Johnson's objection to the lack of more explicit identification of his person in the affidavit also misses the mark. The affidavit merely needed to support the conclusion that contraband or evidence could be found at the Tracy residence. That it did. Even if there had been no mention of Johnson in the affidavit at all, it would still have been sufficient for that purpose.

Johnson raises two more spurious objections. He claims that because the informant claimed to have observed contraband only within three days of his statement and the search warrant itself was only issued the day after the statement, the information was stale. For this proposition, Johnson cites *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998)). However, in *Spikes* this court *upheld* a search of a drug distribution facility based on information ranging in age between four years and ten days. *Id.* at 924. In our case, the information was at most four days old at the time of the search, so there is no grounds for a staleness challenge. Johnson also claims that the affidavit was overbroad in requesting authorization to search "all individuals and vehicles . . . present at the execution of the search warrant." However, the contraband here was not found pursuant to these possibly overbroad specifications, but within the confines of the house. As Johnson does not allege that this part of the warrant was overbroad, the issue is moot. *See United States v. Brown*, 984 F.2d 1074, 1077 (10th Cir. 1993)

(holding that "infirmity of part of a warrant requires the suppression of evidence seized pursuant to that part of the warrant . . . , but does not require the suppression of anything described in the valid portions of the warrant." (quoting *United States v. LeBron*, 729 F.2d 537 n.2 (8th Cir. 1984))).

The United States argues that even if the warrant was defective, Johnson lacks standing to challenge its validity, an issue not reached by the district court. However, as we conclude that the search was made pursuant to a valid warrant, and therefore constitutional, regardless of whether Johnson had standing to challenge it, we need not and do not here resolve the much closer question of whether Johnson had a legitimate expectation of privacy in the Tracy residence.

### III

Johnson challenges the admissibility of his confession on the grounds that it was not voluntarily made and hence obtained in violation of the Due Process Clause. "In determining whether a confession has been elicited by means that are unconstitutional, this court looks to the totality of the circumstances concerning whether a defendant's will was overborne in a particular case." *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999) (quoting *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994)) (internal quotation marks omitted). "In determining the voluntariness of a confession, a reviewing court will not disturb the trial court's findings concerning specific events surrounding the confession unless clear error appears on the record." *United States v. Wrice*, 954 F.2d 406, 410-11 (6th Cir. 1992). "When a defendant claims that a confession was coerced, the government bears the burden of proving by a preponderance of the evidence that the confession was in fact voluntary. This Court has established three requirements for a finding that a confession was involuntary due to police coercion: (i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor

in the defendant's decision to offer the statement." *Mahan*, 190 F.3d at 422 ( internal citations omitted).

Here the question of the voluntariness of Johnson's statements reduces to the first factor, whether the threat to charge Tracy if Johnson did not confess and the promise not to charge her if Johnson confessed were objectively coercive. The proposition that Johnson decided for internal reasons after an alleged long career in the drug business to unburden his soul of his criminal conduct at 4 A.M. in his half-sister's house to a group of police officers can be discounted. Hence it must have been police conduct that caused him to confess. Equally implausible is the suggestion that it was anything other than this threat that caused Johnson to confess his guilt as soon as he entered the premises. Hence the threat was a crucial motivating factor in Johnson's decision to confess. As for the question of whether the threat was objectively coercive, two lines of cases in this court are instructive, one concerning threats and promises with respect to the defendant and one concerning threats and promises with respect to third parties.

Police promises of leniency and threats of prosecution can be objectively coercive. In *Wrice*, we conceded "that a promise of lenient treatment or of immediate release may be so attractive as to render a confession involuntary." 954 F.2d at 411 (citing *Streetman v. Lynaugh*, 812 F.2d 950, 957 (5th Cir. 1987)). We first applied this principle in *Williams v. Withrow*, 944 F.2d 284 (6th Cir. 1991), *modified on other grounds*, 507 U.S. 680 (1993). Williams was a suspect in a double homicide. *Id.* at 286. Williams admitted to having provided and disposed of the gun, but the investigating officers accused him of lying to cover up deeper involvement. *Ibid.* At this point an interrogating officer stated that if Williams "was a witness, and he had no active part in the crime, and that could be confirmed by polygraph, that he would not be charged." *Id.* at 289. In response, Williams admitted that he had also driven the shooter to and from the scene of the crime. *Id.* at 286. This admission was used to

convict Williams of two counts of first-degree murder. *Id.* at 287. On federal habeas review, we examined Williams's claim that the promise of leniency was unconstitutionally coercive:

> We recognize that the success of a criminal investigation often hinges on obtaining information from uncooperative individuals. Indeed, many otherwise unobtainable convictions are secured through extending immunity in exchange for a defendant's testimony against more culpable co-defendants. The necessity of foregoing the prosecution of an informant in order to convict the ringleaders is an altogether different situation from the deliberate inducement of inculpatory statements through *illusory promises of leniency*. Even in situations where immunity is not envisaged, we have no doubt that effective interrogation techniques require, to some extent, a carrot-and-stick approach to eliciting information from an uncooperative suspect. However, when promises of leniency, coupled with threats of immediate imprisonment, have a coercive effect on a suspect, we are obliged to inquire whether the coercion in question was sufficient to overbear the will of the accused.

*Id.* at 289 (emphasis added). We then proceeded to the other parts of the *Mahan* test and ultimately concluded that Williams's confession had been involuntary and therefore affirmed the district court's grant of a writ of habeas corpus. *Id.* at 290.

Unsurprisingly, *Williams* has led to a substantial number of federal habeas claims. However, almost all of these claims have been rejected. *See, e.g., United States v. (Lawrence Ozel) Little*, 9 F.3d 110, 1993 WL 453396, at*9-10 (6th Cir. 1993) (table) (distinguishing *Williams* on the grounds that promises of leniency were, in contrast to *Williams*, not illusory)*;United States v. Redditt*, 2003 WL 21212672, at *3 (6th Cir. 2003) (table) (distinguishing *Williams* because federal investigators offered Redditt merely the elimination of

his federal charges, carrying sentences of up to forty years in prison, while state charges were not discussed); *United States v. (Hazel) Little*, 12 F.3d 215, 1993 WL 501570, at *5 (6th Cir. 1993) (table) (distinguishing *Williams* on the grounds that promises of leniency made during plea negotiations in the presence of counsel were not coercive, even if they might have been if made by police officers during the investigation).

From these cases we deduce the rule that promises of leniency may be coercive if they are broken or illusory.[1] Here, the promise was not to prosecute Tracy if Johnson turned himself in. This was not an illusory promise as it actually committed the police to undertake a specific course of action in return for Johnson's cooperation, as surely Johnson would be arguing here if the police had prosecuted Tracy. Moreover, the promise was not broken because the police in fact did not prosecute Tracy. Therefore the promise of leniency for Tracy was not coercive under the *Williams* line of cases.

A second line of cases concerns promises of leniency and threats of prosecution to third parties. The factual situation in *Finch* was as follows:

> Upon entering the [defendant's residence], the officers discovered the defendant's mother . . . close enough to the door to hear the officers knock and yell. The defendant was discovered, along with a female companion, in a bedroom at the rear of the house. The defendant was told that the officers had a warrant to search for cocaine. All three of the occupants denied that there was any cocaine in the house. Whereupon, defendant was told that if any cocaine were discovered, all three persons in the house could be arrested unless

---

[1] In this context, an illusory promise is a statement in the form of a promise, but lacking its substance in that it does not actually commit the police to undertake or refrain from any particular course of action.

one person admitted sole ownership. The defendant then directed the officers to the garage, where he showed them a quantity of crack cocaine hidden on top of a beam. . . . [T]he defendant was placed under arrest and advised of his rights. The other occupants of the house were not arrested.

998 F.2d at 355. We reasoned that "[c]oercion may involve psychological threats as well as physical threats. Specifically, threats to arrest members of a suspect's family may cause a confession to be involuntary." *Id.* at 356 (citing *Rogers v. Richmond*, 365 U.S. 534 (1961) (finding coercion where prisoner confessed under threat that his wife would otherwise be taken in for questioning)).

> At the time the threat was made, the police had no basis for concluding (1) that either [mother or girlfriend] had knowledge of the existence of cocaine in the house; (2) that either woman had knowledge that Finch was involved in the distribution of cocaine; (3) that a conspiracy existed; (4) that either woman was in constructive possession of the cocaine for which the police were searching; or (5) that either woman was an aider or abettor. Furthermore, the context of the threat is not such that it may be found to have been conditioned upon any fact except finding cocaine.

*Finch*, 998 F.2d at 356. From these facts we concluded that "there was no probable cause to arrest the women and therefore, no legal basis existed for threatening to do so." *Ibid.* On this basis we concluded that Finch's confession was involuntary and had to be suppressed.[2]

---

[2] That it is this determination–whether the execution of the threat would have been lawful–which is dispositive, we find confirmed in one of our unpublished opinions. *United States v. Dillard*, 983 F.2d 1069, 1992 WL 361373, at *3 (6th Cir. 1992) (table) (concluding that threat to arrest defendant's mother was not coercive because the police had probable cause to arrest mother).

Therefore the question whether the threat to prosecute Tracy was coercive turns on the issue of whether the threat could have been lawfully executed. Whether the police could have lawfully arrested Tracy in turn depends on whether the investigating officers had probable cause to suspect Tracy of criminal involvement. Johnson, citing the superficial similarities between his circumstances and the circumstances in *Finch*, urges us to reach the same conclusion as we did there. However, in contrast to *Finch*, here there existed a sufficient factual basis for the police officers to have probable cause to arrest Tracy. Johnson ran a drug distribution business out of Tracy's residence, involving frequent visits by a large number of customers. Tracy must at least have had very strong suspicions about her half-brother's activities and the presence of the product traded at her home. While Tracy was not charged in a drug distribution conspiracy or as an aider or abettor, the investigating officers could have reasonably suspected that her involvement rose to such levels. Moreover, the drugs here were found in the *bed occupied by Tracy*. These facts were sufficient to create probable cause to arrest. Therefore, the police would not have acted wrongfully had they arrested Tracy and were not coercive in threatening to do so.

Johnson also raises the issue of whether his confession was obtained in violation of his *Miranda* rights. As Johnson made substantively identical statements both upon entering the Tracy residence, before he was mirandized, and later during the interrogation in the back bedroom, after he was mirandized,[3] we need resolve this issue here. Even if the

---

[3] Johnson attempts to raise the issue that he was not mirandized at all. However, the officers testified that he was and he did not testify to the contrary, nor does his counsel here make the factual that claim that he had not been mirandized. In such circumstances, the mere absence of a written waiver will not support the conclusion that there was no waiver. *Miggins*, 302 F.2d at 397 ("Although [the defendant] suggests that his waiver was not knowingly, voluntarily and intelligently made because he did not sign a waiver form listing his rights, he offers no authority, and

former statement were inadmissible, as obtained outside the strictures that the rule of *Miranda* places on custodial interrogations, the latter statement would still be admissible. *See Oregon v. Elstad*, 470 U.S. 298, 318 (1985).

## IV

For the foregoing reasons, we **AFFIRM** the denial of Johnson's suppression motion.

---

none can be found, for the proposition that a written waiver is necessary to establish a knowing, intelligent and voluntary waiver of *Miranda* rights.")