**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0440n.06

No. 10-1666

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Apr 25, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| THOMAS GUSTAV WESTERLUND, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: DAUGHTREY, COLE, and ROGERS, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Pursuant to an agreement with the government, defendant Thomas Westerlund pleaded guilty to two counts of sexual exploitation of a child under 18 U.S.C. § 2251(a), one count of possession of images of minors engaged in sexually explicit conduct under 18 U.S.C. § 2252(a)(4)(B), and one count of possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B), but expressly reserved the right to appeal the district court's denial of his motion to suppress the evidence that led to his arrest and conviction. The defendant argues on appeal, as he did in the district court, that the initial search warrant executed by police was not supported by probable cause, that evidence obtained during the execution of that warrant was illegally seized, and that his subsequent statements to police and evidence seized pursuant to two

related search warrants were subject to suppression as "fruit of the poisonous tree." We find no error in the district court's denial of suppression and affirm.

The charges in this case resulted from a complaint to the Zeeland (Michigan) police department by the parents of a 15-year-old boy, B.J., who had come home intoxicated on March 25, 2009, and reported that he had obtained liquor from Westerlund that evening. The police interviewed B.J.'s girlfriend, J.P., who had also come home intoxicated. She claimed that Westerlund drove to a particular liquor store and purchased Canadian House whiskey and Coca Cola. Security cameras and a store receipt corroborated her story.

The next day, March 26, Chief of Police William Olney prepared an affidavit that included this information and other relevant facts uncovered by the department's investigation. Thus, the affidavit recited that B.J.'s parents knew that B.J. had been "hanging out with" Westerlund and had learned that Westerlund provided alcohol to their sons, B.J. and W.J. W.J., the older of the two brothers, said that he had been to Westerlund's house in the past and that Westerlund had provided him with alcohol, cigarettes, and marijuana while he was there. He also said that "a camera had been used at some of their parties and pictures had been taken but he thinks most of them were deleted." W.J. also indicated that his friend, N.W., had engaged in a sexual relationship with Westerlund and that W.J. had witnessed them engaging in mutual sexual touching. N.W.'s mother reported that she was concerned about the relationship her son had developed with Westerlund and had heard that he was molesting N.W., as well as

providing him with liquor and drugs. The affidavit also reflected that in 2002, the Holland Police Department had prepared a report in response to a complaint that Westerlund possessed images of naked children on a compact disc that he had opened on his computer at his place of employment in front of his supervisor.

Olney's affidavit was submitted to a magistrate to support an application to search Westerlund's house, his vehicle, and his place of employment for "evidence relating to alcohol, marijuana, and devices used to photograph, record, and store images of minors without clothes or using alcohol or controlled substances." *United States v. Westerlund*, No. 1:09-CR-154, 2009 WL 3711555, at *1 (W.D. Mich. Nov. 4, 2009). During the ensuing search, officers found marijuana plants, bottles of Canadian House whiskey, computers, electronic storage devices, and photographs of unclothed minors and of minors consuming alcohol. After the search, Westerlund made statements to the police, including admissions that he had supplied young boys with alcohol at his home, that he had looked at images of unclothed boys on his computer, and that he had been undressed in the presence of the boys. Based upon the evidence obtained at his home and these statements, the police obtained a second warrant to search Westerlund's computer and electronic storage devices, and a third warrant to search Westerlund's sailboat. What they discovered in the ensuing searches, coupled with the items seized in the initial search, led to the four-count indictment against Westerlund.

In response to the charges, Westerlund filed a motion to suppress challenging the constitutional validity of the first search warrant for lack of probable cause. He also sought to suppress his statements to the police and evidence obtained pursuant to the two subsequent warrants as fruits of the initial illegal search. The district court determined that the affidavit submitted by Olney did not establish probable cause to search Westerlund's residence for evidence of child pornography. Citing *United States v. Hodson*, 543 F.3d 286, 290-92 (6th Cir. 2008), the district court held that the evidence of child molestation in the affidavit was insufficient to establish probable cause to believe that Westerlund possessed child pornography. *Westerlund*, 2009 WL 3711555, at *3. Thus, the only evidence that Westerlund possessed photographs of naked minors was the 2002 complaint by Westerlund's former employer, which the district court found stale and, therefore, insufficient to support probable cause to search for pornography. *Id.*, at *4. In reviewing the remaining information in the affidavit, the court then determined that the police nevertheless had probable cause to search for evidence of providing intoxicants to minors. *Id.*

In addition, the district court determined that the scope of the search reasonably extended to the seizure of cameras at Westerlund's residence, based on information supplied by W.J. The district judge observed that because photographs are often kept or preserved and can be retrieved through computer forensics if deleted, there was a fair probability that photographic evidence of Westerlund's provision of intoxicants to minors would be found at the residence. *Id.* at *4; *see also United States v. Frechette*, 583 F.3d

374, 379 (6th Cir. 2009) ("[D]igital images . . . can be easily duplicated and kept indefinitely even if they are sold or traded. In short, [they] can have an infinite life span.").

Moreover, the district court recognized that the best evidence of providing alcohol to minors would be photographic documentation, because Westerlund's otherwise legal possession of alcohol alone would be insufficient to prove an offense with respect to the minors who had been in his house. Hence, because W.J.'s statements provided a "substantial basis" to believe that relevant photographs would be found at Westerlund's residence, the district court properly held that the police officers were entitled to examine photographs found throughout the house in the course of their search. *See United States v. Johnson*, 351 F.3d 254, 258 (6th Cir. 2003) (noting that the standard of review for sufficiency of an affidavit is whether a "magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited") (citing *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001)). The district court was also correct in ruling that the police were justified in seizing photographs that they came across in the course of their search that were immediately recognizable as evidence of crimes related to child pornography, under the "plain view" exception to the warrant requirement. *See United States v. Blakeney*, 942 F.2d 1001, 1028 (6th Cir. 1991) (holding that police may seize evidence without a warrant if the officer is lawfully on the premises, the discovery is inadvertent, and the incriminating nature of the evidence is immediately apparent).

Having determined that the search itself was not illegal, the district judge properly concluded that Westerlund's subsequent statements and the evidence obtained from the later searches were not subject to suppression under the "fruit of the poisonous tree" doctrine. *Westerlund*, 2009 WL 3711555, at *6. The court also considered and rejected Westerlund's claims that the magistrate who issued the search warrant was not neutral and detached and that the affidavit contained material omissions. *Id.* at *5 - *6. Finally, the district judge did not specifically address Westerlund's claim that the search of his office was unwarranted because there was no nexus between the crime of providing intoxicants to minors and Westerlund's place of employment, but because none of the evidence supporting the charges against Westerlund was found in his office, the issue was moot – as the district court correctly recognized. *Westerlund*, 2009 WL 3711555, at *4 (citing *Johnson*, 351 F.3d at 260).

For the reasons set out above, we conclude that the district court's denial of the defendant's motion to suppress was supported by the evidence presented at the suppression hearing, and we therefore AFFIRM the district court's judgment.

COLE, Circuit Judge, concurring. A search warrant's issuing magistrate is tasked with making a "practical, common-sense decision" that there is a "fair probability" that evidence of the crime will be found in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A "fair probability" is more than "mere suspicion," *United States v. Algie*, 721 F.2d 1039, 1043 (6th Cir. 1983), but less than "prima facie proof," *United States v. Bennett*, 905 F.2d 931 (6th Cir. 1990). I do not dispute that there was sufficient probable cause to search for evidence relating to Westerlund's provision of drugs and alcohol to minors. What I cannot accept is that there was sufficient probable cause to search for cameras or other photographic evidence, given the paucity of pertinent and timely evidence in Officer Olney's affidavit. But, given our ever-widening *Leon* good-faith exception jurisprudence (an exception that will surely soon, if it has not already, swallow the rule), I respectfully concur only in the result.

Officer Olney provided two pieces of evidence suggesting that Westerlund may have been in possession of photographic material evincing criminal activity. First, W.J., a sixteen-year-old teenager, stated that he had been to parties at Westerlund's home, and that "a camera had been used at some of their parties and pictures had been taken but he thinks most of them were deleted." And second, a former supervisor of Westerlund's told Officer Olney that she had seen Westerlund inadvertently open a file of child pornography. As the majority opinion notes, the district court excluded the latter piece of evidence because it was stale. This leaves, then, only W.J.'s statement to substantiate the warrant's allowance of the search and seizure of "[a]ny and all evidence related to the possession,

manufacture, or distribution of child pornography." A statement, of course, that did not refer to Westerlund in any way. W.J. made no statement that Westerlund ever had the camera in his possession or took the photos.

The majority adopts W.J.'s singular statement that some photos were taken at a party as the basis for searching for photographic evidence at Westerlund's home. Such a position is disturbing, to say the least. At a party with a number of teenagers present, it would not be surprising for every attendee to have immediate access to a camera, namely, their cellular phone. Taken to its logical extreme, the majority's analysis would allow for this search warrant to be applied to the cellular phones of any of the teenagers at the party—there would be a similarly "fair" probability that their devices would contain photos depicting criminal activity. To presume that there is a "fair probability" that photos of criminal activity would be found at Westerlund's home based on this statement alone requires an understanding of the word "fair" that I do not have.

The district court latched onto the latter clause of W.J.'s statement, which referred to the photos being deleted, to note that photos may be resurrected from the trash folder on a computer, so their deletion should pose no bar to obtaining a search warrant. But such an argument puts the cart before the horse; it is not the photos' ability to be seized that is at issue, but whether the photos may be sought at all. Similarly, the majority opinion erroneously applies the "plain view" exception to justify the police officers' seizure of the photographs, while what is actually at issue is whether the police were able to look for any

photos. As Westerlund makes clear, the photos that were immediately incriminating were not laying around in plain view; the government underscores this by noting that "[i]n the course of reviewing the pictures, other photographs were found that clearly and immediately appeared to be evidence of other crimes . . . ." Given that the officers had no authority to rifle through the photos in the first place, it cannot be reasonably stated that the incriminating photos were in plain view. To say otherwise would obviate any need for a search warrant to specifically list the items sought.

The issuing magistrate must, of course, take into account the "totality of the circumstances" when making his decision. *Gates*, 462 U.S. at 230. But W.J.'s statement is the only "circumstance" that would provide the basis for the search for photographic evidence, and the statement is so devoid of context that it cannot be relied upon with confidence. But, given that the evidence was "obtained in objectively reasonable reliance" on a deficient warrant, and the affidavit supporting the warrant was not "so lacking in indicia of probable cause," the *Leon* good-faith exception ought to apply to save the fruits of the search from being suppressed. *United States v. Leon*, 468 U.S. 897, 922-23 (1984). I concur.